# In the United States Court of Federal Claims

| | | |
|---|---|---|
| VETERANS VOCATIONAL SERVICES,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>SYGNETICS, INC.,<br>Defendant-Intervenor. | ) | No. 08-589 C<br><br>Filed August 29, 2008 |

## ORDER

Presently before the Court is plaintiff's application for a temporary restraining order and a preliminary injunction, filed August 19, 2008 ("Pl.'s App.," docket entry 4). Both defendant and defendant-intervenor opposed plaintiff's application on August 27, 2008 ("Def.'s Opp.," docket entry 14, and "Sygnetics's Opp.," docket entry 15), and plaintiff supplemented its application with an additional brief on August 27, 2008 ("Pl.'s Brief," docket entry 16). During a combined status conference and hearing held telephonically on August 29, 2008, the parties presented oral argument supporting their positions with respect to plaintiff's application for interlocutory relief.

Plaintiff asks for a temporary restraining order and preliminary injunction preventing defendant from "issuing a Notice to Proceed (an 'NTP') or a task [order]" to awardees on the solicitation with respect to which plaintiff filed the present bid protest action. Pl.'s App. at ¶¶ 1, 2. The Court understands this to be a request to stay any action by the Department of Veterans Affairs ("DVA") aimed at allowing the contract awardees to begin performance until after the Small Business Administration ("SBA") has resolved plaintiff's size and status protests and this Court has resolved this litigation.

To obtain a temporary restraining order, VVS must demonstrate (1) a substantial likelihood of success on the merits; (2) irreparable harm; (3) a balance of the hardships tilting in its favor; and (4) that the injunctive relief sought is in the public interest. *Anton/Bauer, Inc., v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003). In bid protest cases, this is appropriate "only in extremely limited circumstances." *CCL Serv. Corp. v. United States*, 48 Fed. Cl. 113, 120 (2000) (quoting *CACI, Inc. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir.1983)). Because VVS has failed to adequately demonstrate these factors with respect to each of its potential claims, the Court hereby **DENIES** plaintiff's application for a temporary restraining order. The Court contemplates an expedited briefing schedule looking toward resolving VVS's claims on their merits on cross-motions for judgment on the administrative record. The hearing on the cross-motions will effectively combine the hearing on the motion for preliminary injunction and the trial on the merits. *See* Rule 65(a)(2) of the Rules of the United States Court of Federal Claims ("RCFC"). Thus, the Court hereby **DEFERS** ruling on plaintiff's motion for preliminary injunction. Should circumstances warrant, the Court, upon notice, may rule on the motion for preliminary injunction before the hearing on the merits.

VVS presents three sets of bid protest claims in this litigation: (1) a protest, currently pending before the SBA, that contract awardee Sygnetics is not a small business within the meaning of that term as used in the DVA solicitation at issue ("the size protest"); (2) two protests, currently pending before the SBA, that contract awardees Heritage of America and Veterans Transitional Services ("VTS") are not validly-constituted service-disabled veteran-owned small business concerns ("SDVO SBCs") ("the status protests"); and (3) a traditional bid protest allegation that VVS's proposal was improperly evaluated by DVA, constituting arbitrary and capricious action or an abuse of discretion by DVA.

With respect to the size protest, VVS has failed to demonstrate irreparable harm. According to the parties' pleadings, DVA made its award to Sygnetics on July 21, 2008; DVA posted notice of this award on the FedBizOpps website on August 7, 2008; VVS received actual notice of the award to Sygnetics on August 14, 2008, and VVS filed its size protest on August 15, 2008. The size protest therefore suffers from two separate timeliness problems, each of which would render SBA's decision (even if favorable to VVS) inapplicable to the present procurement. First, FAR 19.302(d)(1) required VVS to file its size protest within five business days after receiving notice of the award to Sygnetics. The posting on the FedBizOpps website was sufficient to give VVS constructive notice of the award on August 7, 2008. 13 C.F.R. § 121.1004(a)(4) ("Where notification of award is made electronically, . . . a protest must be received by the contracting officer before close of business on the fifth day, exclusive of Saturdays, Sundays, and legal holidays, after the electronic posting."); *see also Worldwide Language Resources, Inc.*, B-296984, Nov. 14, 2005, 2005 CPD ¶ 206; *CBMC, Inc.*, B-295586, Jan. 6, 2005, 2005 CPD ¶ 2. Thus, VVS had to file its size protest by August 14, 2008, in order for it to be timely. Because VVS's protest was not filed until August 15, 2008, any decision by SBA will apply only to future actions, not to the present procurement. FAR 19.302(j). Second, because VVS filed its protest after the contract award to Sygnetics (which occurred on July 21, 2008), any decision by SBA would also come after the award. Under 13 C.F.R. §

121.1009(g)(3), any decision by SBA after contract award is inapplicable to the present procurement and only applies to future actions. Thus, even a favorable determination by SBA likely will not result in Sygnetics being eliminated as a contract awardee in the present procurement. Given that Sygnetics likely will be allowed to continue as an awardee no matter what the outcome of the SBA size protest, the Court can discern no irreparable harm that will befall VVS by permitting Sygnetics to begin performance under the contract.

With respect to the status protests, there is similarly no irreparable harm to VVS in allowing Heritage of America and VTS to begin performance. According to the parties' pleadings, DVA made its awards to Heritage of America and VTS on July 21, 2008; VVS received actual notice of these awards on July 25, 2008; VVS filed its status protest against Heritage of America on July 28, 2008; and VVS filed its status protest against VTS on July 29, 2008. Because VVS filed these protests within five business days of receiving notice, the protests were timely filed. FAR 19.302(d)(1). But the protests were still filed after contract award, and the SBA's decisions will therefore come after contract award. Under 13 C.F.R. § 125.27(g), "[i]f a contract has already been awarded, and SBA sustains the protest, then the contracting officer cannot count the award as an award to an SDVO SBC and the concern cannot submit another offer as an SDVO SBC on a future SDVO SBC procurement unless it overcomes the reasons for the protest," but it is only if "the contract has not yet been awarded [that] the protested concern is ineligible for an SDVO SBC contract award." Thus, because the SBA's decisions will come after contract award, they will not eliminate Heritage of America and VTS as contract awardees. Given that Heritage of America and VTS will be allowed to continue as awardees no matter what the outcome of the SBA status protests, the Court can discern no irreparable harm that will befall VVS by permitting Heritage of America and VTS to begin performance under the contract.

With respect to both the size and status protests, the Court understands that VVS might ultimately be able to demonstrate problems with DVA's waiver of the pre-award notification requirement in FAR 15.503(a). First, VVS might be able to demonstrate that the failure of the contracting officer to contemporaneously put into writing her decision to waive the requirement was arbitrary or capricious, an abuse of discretion, or otherwise contrary to law. Even were this the case, though, the Court can discern no prejudice to VVS from the contracting officer's actions. Even if she had committed her decision to writing when she made the decision to waive the pre-award notification requirement on July 18, 2008, rather than waiting until August 22, 2008, to do so, the contracting officer still would have decided to waive the requirement of pre-award notification. Thus, even if the contracting officer had acted appropriately, VVS would not have received notice of the awards to Heritage of America and VTS before those awards were made, and therefore VVS could not have filed its status protests early enough to have them resolved by SBA before contract award. Thus, even to the extent VVS is ultimately able to prove that the contracting officer acted inappropriately by not immediately committing her decision to writing, VVS cannot show that such inappropriate action was prejudicial, and therefore VVS is unlikely to succeed on the merits of this claim.

Second, VVS ultimately might be able to show that the contracting officer's decision that the contract requirement was so urgent as to require an award without delay was arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. If VVS can demonstrate this, it is likely to be able to show prejudice, because proper pre-award notification by the contracting officer might have permitted VVS to file timely protests and stop the awards to Heritage of America and VTS (presuming the SBA sustained the status protests), an option foreclosed to VVS by the contracting officer's failure to issue pre-award notification. Thus, VVS has some likelihood of succeeding on the merits of this claim. How likely VVS is to succeed on this claim, however, is unclear. Neither the facts nor the law have yet been fully developed or briefed by the parties. Even assuming VVS is likely to succeed on the merits, though, VVS cannot show that it will suffer irreparable harm if Heritage of America and VTS are allowed to begin performance. If no temporary restraining order is granted now, Heritage of America and VTS will perform such services as may be required by DVA. If a temporary restraining order were granted now, the incumbent contractor (someone other than VVS) would likely continue providing those services under a contract extension. In either case, VVS would not be performing services required by DVA. If the failure to grant injunctive relief would result in VVS's losing work that arguably belonged to it, the possibility of irreparable injury might exist, but that is not this case. Finally, should the Court ultimately find that the contracting officer acted inappropriately in waiving the pre-award notification requirement, and should SBA ultimately conclude that either (or both) of VVS's status protests have merit, there will be time enough then for the Court to craft appropriate permanent injunctive relief.

Finally, VVS's complaint contains a conclusory allegation that "DVA's decision to reject VVS's proposal was arbitrary, capricious and lacked a rational basis in that the DVA did not evaluate VVS's proposal in accordance with the terms of the solicitation." Complaint at ¶ 16. Without any facts to flesh out this allegation further, the Court cannot make any finding regarding VVS's likelihood of success on the merits. Without making such a finding, the Court cannot grant plaintiff's application for a temporary restraining order. Thus, the Court declines to stay contract performance while it decides the merits of this claim.

After consulting with the parties during the status conference on August 29, 2008, the Court hereby **ORDERS** as follows:

1. As discussed above, plaintiff's application for a temporary restraining order is **DENIED**.

2. As discussed above, the Court **DEFERS** ruling on plaintiff's motion for a preliminary injunction.

3. Defendant shall supply the Court, counsel for plaintiff, and counsel for defendant-intervenor with copies of the administrative record by **Friday, September 5, 2008**.

4. The parties shall file a joint status report not later than **Friday, September 12, 2008**, informing the Court whether the SBA has issued any final ruling in VVS's size and status protests against Sygnetics, Heritage of America, and Veterans Transitional Services and, if it has, recommending an expedited briefing schedule aimed at resolving each of VVS's size and status protest claims. If the SBA has not issued final rulings by September 12, and if the parties wish to brief the claims that do not relate to plaintiff's size and status protests pending before the SBA separately from the claims that do relate to the SBA protests, the Court would be open to such a two-track briefing schedule, and the parties should therefore, if they so desire, also recommend in their joint status report an expedited briefing schedule aimed at resolving VVS's claims that do not relate to plaintiff's SBA size and status protests. Should the parties be unable to agree on a proposed briefing schedule or schedules, they shall submit separate proposed schedules along with a statement of reasons in support of their respective proposals.

5. In any event, the Court will hold a further telephonic status conference on **Tuesday, September 16, 2008, at 10:00 a.m.** in order to consider the nature and timing of further proceedings in this case.

**IT IS SO ORDERED**.

s/ George W. Miller
GEORGE W. MILLER
Judge